**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

MICHAEL NOCK,

        Plaintiff,

vs.

GKN ARMSTRONG WHEELS, INC.,

        Defendant.

No. C03-3093-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**DEFENDANT'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 7
      *1. Requirements of Rule 56* . . . . . . . . . . . . . . . . . . . . . . . 7
      *2. The parties' burdens* . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *3. Summary judgment in employment discrimination cases* . . . . . 9
   *B. Nock's Disability Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *1. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *2. Actual disability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      *3. Record of a disability* . . . . . . . . . . . . . . . . . . . . . . . . 17
      *4. Perceived disability* . . . . . . . . . . . . . . . . . . . . . . . . . 18

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On November 5, 2003, Michael Nock filed a complaint in this court against his former employer, defendant GKN Armstrong Wheels, Inc. ("GKN"), alleging three causes of action: a claim of disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, a similar claim under Iowa Code Chapter 216 *et seq.*, and a state common law claim for retaliatory discharge in violation of public policy. With respect to his state common law claim, plaintiff Nock asserts that he was fired in retaliation for seeking workers' compensation benefits. Defendant GKN answered Nock's complaint on January 14, 2004, denying Nock's claims and asserting various defenses.

Defendant GKN has filed a Motion for Summary Judgment on two of Nock's three claims. First, in its motion, defendant GKN claims that Nock is not "disabled" within the meaning of either the ADA, or Chapter 216 of the Iowa Code. Specifically, defendant GKN asserts that Nock does not have a physical impairment that substantially limits one or more of his major life activities. After obtaining extensions of time for filing his resistance, Nock timely resisted GKN's Motion for Summary Judgment, arguing that there are genuine issues of material facts in dispute regarding all of his claims. Before discussing the standards for GKN's Motion for Summary Judgment, however, the court will first examine the factual background of this case.

### B. Factual Background

The summary judgment record reveals that the following facts are undisputed. Plaintiff Nock had a low back condition or injury which occurred in April of 1995. The condition was diagnosed as a herniated lumbar disc with degenerative disc disease at the

L4-5 and L5-S1 vertebrae. Nock was treated non-surgically. Nock felt his back condition was better after he received an epidural treatment from Dr. L.T. Donovan. On October 30, 1995, Nock's back condition was rated by Dr. Donovan at a five percent impairment of the whole person.

On August 3, 2001, Nock injured his back while he was shopping at a grocery store when he leaned over to get some meat out of an open refrigerator. The next morning he was in such pain that he collapsed and had to be taken to the hospital by ambulance. Nock saw Dr. James Schwartz, an orthopedist. Nock reported that he had pain going down both legs and numbness in his feet and legs. An MRI of Nock's spine revealed a broad posterior disc herniated at the L4-5 and L5-S1 vertebrae, with degenerative disc disease at those same levels. Nock reported this injury to GKN's workers' compensation administrator, Crawford & Company. Mike Pereine determined that the injury was not work-related because it did not occur at work. Dr. Schwartz, however, indicated in his examination notes of Nock that his injury on August 3, 2001, was a flare-up from his previous injury in 1995.

As a result of his back injury, Nock was off work for about one month. After he returned to work, GKN placed Nock on light duty for several weeks during his recovery. Nock eventually returned to his duties in the Earthmover department with the medical restrictions to not lift more than 50 pounds, to take a break every two hours, and to have no overhead lifting. On March 11, 2002, Nock was working in the Earthmover department in a repair booth where he corrected any cracks, divots, or other imperfections in wheel rims. At that time, Nock contends that he stepped off a pallet, which caused him to trip and fall onto the floor, re-injuring his lower back. Nock was taken by his supervisor, David Koons, to GKN's company doctor's office where he was seen by Dr. Strangl. The diagnosis was a possible herniated lumbar disc and a strained or sprained

lower back.  Nock had the same symptoms of a shocking sensation into his legs and toes that he had experienced before, but on this occasion the sensation was not as bad.

Nock was instructed by Dr. Strangl to avoid heavy lifting, repetitive bending and twisting.  On March 18, 2002, Nock was seen by Dr. Dean W. Moews, who allowed Nock to resume working with the following work limitations: no repetitive bending, squatting, or twisting, and not to lift over 5-10 pounds.  On March 26, 2002, Nock was again seen by Dr. Moews.  Nock reported that he had definite improvement in his condition with physical therapy.  Dr. Moews's examination findings were that Nock's "ambulation, range of motion, movement, and complaints of pain are markedly improved. Patient actually, on my evaluation, seems to be getting close . . .to back to baseline for him."  Defendant's App., Ex. L.  Dr. Moews modified Nock's work limitations as follows:  no repetitive bending, squatting  or twisting, no lifting over 50 pounds, and no stooping of any kind.  Up to this time, Nock was taken off work because GKN did not have work available for him.

Nock returned to work on March 26, 2002, where he performed light duty jobs of clerical tasks for a few days.  On April 2, 2002, Nock returned to his assigned job in the repair booth, where he worked until April 14, 2002, when he was transferred to the Ag Rim line.  On April 2, 2002, Nock was seen again by Dr. Moews, at which time Nock reported that he had done fair with working within his 50 pound lifting restriction.  Nock also reported no severe pain or discomfort and that he was improving.  Dr. Moews modified Nock's work restrictions to allow Nock to lift up to 75 pounds.

On April 5, 2002, Nock was discharged from physical therapy and the physical therapist noted that Nock had done well with treatment and was essentially pain free.  On April 8, 2002, Dr. Moews again examined Nock, at which time Nock reported that he was doing fairly well at work with the 75 pound weight restriction.  Nock informed Dr. Moews

that he had "a little bit of pain and stiffness, but otherwise was tolerable." Defendant's App., Ex. N.

On April 14, 2002, Nock was transferred from the Earthmover department to the Conventional Ag department. From April 14, 2002, until May 1, 2002, Nock operated a coiler on the Ag Rim line on the night shift, and was working eight hours a day and five hours on Saturday. On May 1, 2002, Nock was one of thirteen employees whose employment was terminated purportedly due to a reduction in force.

On June 6, 2002, Nock sought medical treatment from orthopedic surgeon Dr. James Schwartz. Nock complained about numbness and tingling down his legs and into his feet and toes. Dr. Schwartz did not see Nock as a surgical candidate at that time and referred him to physical therapy. Dr. Schwartz, however, did rate Nock as being totally disabled and recommended "no work" for him. Nock did not see Dr. Schwartz again until September 27, 2002, when he reported that his lower back "was doing pretty well" in that "he really had no pain and has required no medication as of late." Defendant's App., Ex. F. Nock also reported to Dr. Schwartz that he recently had an asthmatic cough and felt something pop in his back. Dr. Schwartz ordered physical therapy for Nock.

On November 4, 2002, Nock had an MRI of his lumbar spine, which according to Dr. Schwartz, showed worsening pathology at the L4-5 and L5-S1 vertebrae levels. Dr. Schwartz recommended micro-discectomy surgery at those levels. Nock had lumbar micro-discectomy surgery on January 13, 2003, and subsequently underwent physical therapy. Both of these procedures were helpful in improving his back condition.

Nock collected unemployment for approximately one year following his termination. During that time, Nock certified to employers that he was able and available to work. Nock did volunteer work at a center for the elderly in Fairmont from October of 2002 until October of 2003, where he would serve and/or deliver meals.

Nock worked at a Hy-Vee grocery store in Fairmont from January 8, 2004 to January 18, 2004. His job entailed stocking shelves, and bagging and carrying groceries. He was able to handle the physical demands of that job. He voluntarily left that employment for a better paying job at Aerospace Systems. Nock worked for Aerospace Systems making wire harnesses from computers from February of 2004 through May 19, 2004. He was terminated from that sedentary job for missing two days of work, the second day he missed work for a doctor's appointment. Nock subsequently was employed at Manpower, Inc. but was laid off in December of 2004 or January of 2005.

Nock likes to cook and feels he could work as a short-order cook. Nock cooks, dusts, cleans kitty litter and grocery shops. Nock feels that he could perform the physical requirements of his last job in GKN's Earthmover department repair booth. Nock has enjoyed camping, fishing, going to movies and shopping since his injury. He tried to ride a bicycle on one occasion but found it to be uncomfortable.

Dr. Schwartz released Nock as having reached maximum medical improvement on February 19, 2004. Dr. Schwartz rated Nock's permanent impairment as being fifteen percent of the body as a whole. Dr. Keith Riggins, an independent medical examiner physician hired by Nock's attorney in his workers' compensation case, also rated Nock's permanent impairment as being fifteen percent of the body as a whole. Dr. Riggins further recommended that the maximum weight Nock should lift is thirty pounds, with frequent lifting being limited to fifteen pounds with all lifting being confined to the interval between Nock's knees and shoulders. As of March 15, 2004, Nock was not taking any medications for his back nor did he have any medical appointments scheduled. Nock's present medical restrictions, in addition to the lifting restrictions noted above, include that he should avoid squatting, stooping, or frequent twisting.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F. Supp. 1224, 1230-31 (N.D. Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F. Supp. 1303, 1305-07 (N.D. Iowa 1997); *Laird v. Stilwill*, 969 F. Supp. 1167, 1172-74 (N.D. Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F. Supp. 1483, 1499-1501 (N.D. Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 817-18 (N.D. Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F. Supp. 1237, 1239-40 (N.D. Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F. Supp. 805 (N.D. Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

> Rule 56. Summary Judgment
>
> (b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.
> (c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's

function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Hartnagel,* 953 F.2d at 394.

## 2. *The parties' burdens*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach*, 49

F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377 (same).

### 3. *Summary judgment in employment discrimination cases*

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991); *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir. 1987), *cert. denied*, 488 U.S. 1004 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir. 1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir. 1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one

conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post-Dispatch*, 51 F.3d 147, 148 (8th Cir. 1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir. 1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir. 1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818 (1999). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 142 (quoting *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is "'1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). The court will apply these standards to defendant's Motion for Partial Summary Judgment.

### B. Nock's Disability Claims

GKN contends that it is entitled to summary judgment on Nock's disability discrimination claims, because Nock is not "disabled" within the meaning of the ADA or the ICRA.[2] GKN argues that Nock's back impairment does not substantially limit Nock's

---

[1]In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

[2]The court is aware that Nock has asserted disability discrimination claims under both the ADA and state law. However, the parties have not argued, and the court cannot find, that there is some significant difference between the way "disability" is defined under the ADA and the way it is defined under the Iowa Civil Rights Act. *See, e.g., Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 918 (Iowa 1997) ("Given the common purposes of the ADA and the ICRA's prohibition of disability discrimination, as well as the

(continued...)

ability to work or any other major life activities. GKN contends that Nock's lifting restriction is not sufficient, standing alone, to establish substantial impairment. In resistance to GKN's Motion For Partial Summary Judgment, Nock contends that he was "disabled" within the meaning of the ADA, either because of an actual disability, having a record of a disability, or because GKN perceived him to be disabled.

### 1.    Analysis

To establish a *prima facie* case of disability discrimination under the ADA, an employee "must show that (1) the employee is disabled within the meaning of the ADA; (2) the employee is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) the employee suffered an adverse employment action because of the disability." *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005); *accord Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044 (8th Cir. 2005); *Kincaid v. City of Omaha*, 378 F.3d 799, 804 (8th Cir. 2004);*Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2003); *Longen v. Waterous*, 347 F.3d 685, 688 (8th Cir. 2003); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). The first element requires Nock to show—or at this juncture, show that there is a genuine issue of material fact—that he is either actually disabled, had a record of a disability or was "regarded as" disabled by GKN. *See* 42 U.S.C. § 12102(2) (defining disability as including having "a

---

[2](...continued)
similarity in the terminology of these statutes, we will look to the ADA and underlying federal regulations in developing standards under the ICRA for disability discrimination claims. [Citations omitted]. . . . Given the identity of the applicable legal principles and analytical framework with respect to the question of whether one has a disability under the ADA and the ICRA, our subsequent discussion of whether [the plaintiff] is disabled applies equally to her claims under both statutes."). Therefore, the court's discussion of "disability" here applies equally to Nock's claims under the ADA and the ICRA.

physical or mental impairment that substantially limits one or more of the major life activities of such individual", and "being regarded as having such an impairment").

### 2. *Actual disability*

As the Eighth Circuit Court of Appeals has explained,

> "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); *see Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1318-19 (8th Cir. 1996). Determining whether a major life activity has been substantially limited is an individualized inquiry. Thus, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

*Brunke v. Goodyear Tire and Rubber Co.*, 344 F.3d 819, 821 (8th Cir. 2003). Furthermore,

> In *Toyota Motor Manufacturing, Kentucky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S. Ct. 681. Although *Williams* concerned a limitation with regard to the performance of manual tasks, we recently explained that its holding applies to ADA claims concerning non-manual-task limitations. *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1025 (8th Cir. 2003); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 715 (8th Cir. 2003). In [each] case, therefore, we will consider whether each of [the plaintiff's] impairments "prevents or

> severely restricts" [the plaintiff] from performing a major life
> activity. *See Williams*, 534 U.S. at 198, 122 S. Ct. 681. In
> fulfilling this inquiry we should also consider (1) the nature
> and severity of [the plaintiff's] impairment, (2) its duration or
> anticipated duration, and (3) its long-term impact. *See* 29
> C.F.R. § 1630.2(j)(2)(2002); *Cooper v. Olin Corp.,
> Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).

*Wood*, 339 F.3d at 685.

Nock contends that because of his back condition, and its incumbent lifting restrictions, he is substantially limited in the major life activity of lifting and working. The record evidence is that the impairment to Nock's back is permanent. *See Wood*, 339 F.3d at 685 (considering "nature and severity" of the impairment, duration, and long-term impact). It is uncontested that, as of February 19, 2004, Dr. Schwartz diagnosed Nock with a fifteen-percent impairment of the whole body. Dr. Riggins also diagnosed Nock with a fifteen-percent impairment of the whole body. Nock is limited to lifting 30 pounds and 15 pounds frequently, with those limits further restricted to lifting between his knees and shoulders.

The Eighth Circuit Court of Appeals has repeatedly recognized lifting to be considered a major life activity. *Philip v. Ford Motor Co.,* 328 F.3d 1020, 1023 (8th Cir. 2003) ("Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working 42 U.S.C. § 1630.2(i), as well as sitting, standing, lifting, and reaching." ); *Webner v. Titan Distrib., Inc.* 267 F.3d 828, 834 (8th Cir. 2001) ("We have previously recognized sitting, standing, lifting, and reaching to be considered major life activities."); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001) ("Major life activities include . . . working, as well as sitting, standing, lifting. . ."); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948 (8th Cir. 1999) ("Sitting, standing, lifting and reaching also are considered major life

activities."); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) ("Sitting, standing, lifting, and reaching are also considered major life activities."). However, under Eighth Circuit precedent, "a 'general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability.'" *Dropinski v. Douglas County*, 298 F.3d 704, 706 (8th Cir. 2002) (quoting *Mellon v. Federal Express Corp.*, 239 F.3d 954, 957 (8th Cir. 2001) (quoting in turn *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir. 1997)); *accord Wenzel v. Missouri-Am. Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) ("A lifting restriction, without more, is not a disability."); *Brunko v. Mercy Hosp.*, 260 F.3d 939, 940 (8th Cir. 2001) ("Although lifting itself is identified as a major life activity, this court has held that a general lifting restriction without more is insufficient to constitute a disability within the meaning of the ADA.").

Nock directs the court's attention to the Eighth Circuit Court of Appeals's decision in *Webner*, 267 F.3d at 834, in support of his position. The plaintiff in *Webner*, after undergoing three back surgeries, was restricted to lifting no more than 15 pounds regularly, 25 pounds occasionally, and a maximum of 50 pounds. *Id.* at 832. Moreover, the plaintiff testified at trial that "his back injury limited his ability to walk, to stand for long periods of time, to twist, and to bend at the waist without pain, which ultimately affected his ability to work." *Id.* Plaintiff's treating physician concluded that the plaintiff had an impairment rating of 18 percent of the body as a whole after his three back surgeries. *Id.* at 834. In affirming the jury's determination of liability under the ADA, the Eighth Circuit Court of Appeals stated that a lifting restriction alone would be insufficient to establish a disability but held that plaintiff's back injury, which substantially limited his ability to work, to twist, to bend, and to stand, in addition to limiting his ability to lift, constituted a physical impairment that substantially limits one or more major life activities. *Id.* Thus, the impairment suffered by the plaintiff in *Webner* subjected him to more than

just a lifting restriction but also affected his ability to bend, walk, stand and work.  In the present case, Nock suffers from roughly the same lifting restriction seen in *Webner*.  Nock has a lifting restriction that limits him to lifting a maximum of 30 pounds, lifting not more than 15 pounds regularly, and to restrict his lifting between his knees and his shoulders.[3] The court looks to see if Nock has generated a genuine issue of material fact on the question of whether he is substantially limited in the major life activity of working.

A person is "substantially limited" in the major life activity of working, if one is "unable to work in a wide range of jobs," not just a particular job.  *Wenzel*, 404 F.3d at 1041; *Knutson v. Ag Processing, Inc.*, 394 F.3d 1047, 1050 (8th Cir. 2005) ("When the major life activity at issue is working, 'the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'") (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999)).  As the Eighth Circuit Court of Appeals has explained,

> A plaintiff alleging a substantial limitation in the ability to work must demonstrate an inability "to work in a broad class of jobs," *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999), and show that "he has suffered a significant reduction in meaningful employment opportunities" as a result of his impairments, *Philip*, 328 F.3d at 1024.  "An impairment that disqualifies a person from only

---

[3]The court notes that Nock points to the fact that Dr. Schwartz gave Nock an impairment rating of fifteen percent of the body as a whole and argues from this that he is comparable to the plaintiff in *Webner*, who had an impairment rating of 18 percent of the body as a whole.  The flaw in this analysis is that Nock's physician gave him this impairment rating almost two years after he had left his employment at GKN and over a year after he had lumbar microsurgery.  On October 30, 1995, Dr. Donovan gave Nock an impairment rating of 5 percent of the body as a whole.  However, there is nothing in the summary judgment record which would indicate what Nock's impairment rating of the body as a whole was on May 1, 2002, the date his employment with GKN was terminated.

> a narrow range of jobs is not considered a substantially
> limiting one." *Wooten v. Farmland Foods*, 58 F.3d 382, 386
> (8th Cir. 1995) (quoting *Heilweil v. Mount Sinai Hosp.*, 32
> F.3d 718, 723 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147,
> 115 S. Ct. 1095, 130 L. Ed.2d 1063 (1995)).

*Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 686 (8th Cir. 2003). Here, viewing all the facts in the light most favorable to Nock and giving him the benefit of all reasonable inferences that can be drawn from the facts, Nock has failed to generate a genuine issue of material fact that he is "suffer[ing] a significant reduction in meaningful employment opportunities" as a result of his impairments. *Id.* Nock found employment at Hy-Vee, Aerospace, and Manpower, Inc. since he left his job at GKN. He does not assert and has pointed to no evidence that jobs within his limitations are not generally available within a reasonable geographical area. Because Nock's impairment does not substantially limit his ability to work, Nock's situation is distinguishable from *Webner*. Thus, the court concludes based on the record evidence, that Nock has failed to generate a genuine issues of material fact that he is "disabled" within the meaning of the ADA and Iowa law. *See* Fed. R. Civ. P. 56(e) (to defeat a motion for summary judgment, the opposing party must go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324. Thus, Nock's disability discrimination claims under federal and state law cannot proceed on the basis of "actual" disability.

### 3. *Record of a disability*

Nock also contends that he is disabled within the meaning of the ADA because he has a record of a disability. This court explained the requirements for proof of a "record" of disability in *Barnes v. Northwest Iowa Health Center*, 238 F. Supp.2d 1053 (N.D. Iowa 2002), as follows:

> To establish the existence of a record of a disability, an individual must show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 924 (8th Cir. 2001) (citing 29 C.F.R. § 1630.2(k)). "In order to have a record of a disability, an employee's 'documentation must show' that she has a history of or has been subject to misclassification as disabled." *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th Cir. 2000) (citing [*Weber v.] Strippit*, 186 F.3d [907,] 915 [ (8th Cir. 1999), *cert. denied*, 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000)]).

*Id.* at 1091.

Nock has pointed to no such evidence here. *See* FED. R. CIV. P. 56(e) (in resisting summary judgment, the non-movant bears the burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. Instead, he points to no more than a "record" of restrictions from his back injuries, his periods of light-duty work and rehabilitation, and eventual permanent lifting restriction prior to his termination. Thus, Nock's disability discrimination claims under federal and state law cannot proceed on the basis of a "record" of disability, either.

### 4. *Perceived disability*

Nock has also advanced his ADA claim under the theory that he falls under the protective umbrella of the ADA by virtue of being "regarded as" or "perceived" as disabled by GKN. That is to say that "[a] person may be disabled under the ADA if, notwithstanding the absence of an actual disability, he is perceived or 'regarded as' having an impairment that substantially limits a major life activity." *Weber v. Strippit, Inc.*, 186

F.3d 907, 914 (8th Cir. 1999) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)); *accord Costello v. Mitchell Public Sch. Dist. 79*, 266 F.3d 916, 924 (8th Cir. 2001) ("To be regarded as disabled under the ADA, an individual must show that she has an impairment that 'does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.'") (quoting 29 C.F.R. § 1630.2(1)(1); and citing *Cody v. CIGNA Healthcare, Inc.*, 139 F.3d 595, 598-99 (8th Cir. 1998)); *Brunko v. Mercy Hosp.*, 260 F.3d 939 (8th Cir. 2001) ("To be regarded as disabled under the ADA, Brunko would have to show that Mercy mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or Mercy mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities.") (citing *Sutton*, 527 U.S. at 489). By including individuals who are regarded as disabled within the ambit of the ADA, Congress intended to combat the effects of stereotypes that "work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995). As this court explained in *Simonson v. Trinity Regional Health System*, 221 F. Supp.2d 982 (N.D. Iowa 2002), *aff'd*, 336 F.3d 706 (8th Cir. 2003), in "regarded as" actions,

> it is not a question of whether the defendants treated the plaintiff adversely "because of his or her feelings about the plaintiff's physical or mental impairment," *Weber v. Strippit, Inc.*, 186 F.3d 907, 915 (8th Cir. 1999), but a question of whether the defendants' treatment of the plaintiff was a result of the defendants' harboring "'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001).

*Simonson*, 221 F. Supp.2d at 990.

To survive this motion for partial summary judgment, Nock must produce sufficient evidence that would allow a reasonable jury to conclude that GKN either (1) mistakenly believed that Nock had a physical impairment that substantially limited one or more major life activities, or (2) mistakenly believed that an actual, though nonlimiting, impairment substantially limited one or more of his major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *accord Brunko*, 260 F.3d at 942 (citing *Sutton*, 527 U.S. at 489). Nock's principal argument is that GKN's re-assigning him from his job in the repair booth to the Ag Rim line as showing that GKN regarded him as disabled. To be regarded as substantially limited in the life activity of working, a plaintiff must be regarded as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Cooper*, 246 F.3d at 1089 (citing *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523-24 (1999)). Inability to perform one particular job does not constitute a substantial limitation on working. *Id.* A plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. *Id.* (citing *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996)). Factors to be considered in determining whether a plaintiff is restricted from a class of jobs include his expertise, background, and job expectations. *Id.* (citing *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 96-61 (8th Cir. 2000)).

On the record presented here, the court concludes that Nock has not sustained his burden of generating a genuine issue of material fact that GKN regarded him as unable to work in a broad class of jobs. The fact that GKN assigned Nock to the Ag Rim line undermines Nock's claim that GKN regarded him as substantially limited in the major life activity of working. A number of decisions of the Eighth Circuit Court of Appeals supports this conclusion. In *Miller v. City of Springfield*, 146 F.3d 612 (8th Cir. 1998),

the plaintiff was an applicant for the position of city police officer, a position she had held in another city for ten years. *Id.* at 614. The plaintiff failed an agility test multiple times before eventually passing it, but then was rejected based on the results of a psychological test which showed "above normal depression." *Id.* During the interim period, the plaintiff applied for and accepted a position as a telecommunicator for the city emergency communications department. *Id.* The Eighth Circuit Court of Appeals affirmed the district court"s grant of judgment as a matter of law in favor of the city, concluding that the city "could not have regarded Miller as substantially limited in the major life activity of working because she was working for the city at the time." *Id.* at 615. More recently, in *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083 (8th Cir. 2001), the Eighth Circuit Court of Appeals also addressed a claim of discrimination based on perceived disability. In *Cooper*, the plaintiff took leaves of absence for personal problems and depression. Although the plaintiff's health care providers eventually cleared her to return to her job as locomotive engineer, the defendant's medical director would not allow her to operate the locomotive. During the interim, the plaintiff worked for the defendant "answering phones in the office and working in the scale house as necessary." Although the plaintiff received the same pay and benefits, she found the work "humiliating" and "useless" and sought to return to the locomotive engineer position. *Id.* at 1086-87. The court of appeals held that the defendant's medical director's "conclusion that Cooper was precluded from her particular locomotive job is not sufficient to indicate that he considered her to be disabled in the activity of working." *Id.* at 1090. Similarly, in *Brunko v. Mercy Hospital*, 260 F.3d 939 (8th Cir. 2001), the Eight Circuit Court of Appeals affirmed the granting of summary judgment on the plaintiff's claim that the defendant perceived her to be disabled. In *Brunko*, the plaintiff worked as a staff nurse for the defendant hospital. *Id.* at 941. The plaintiff injured her back in a work-related accident and underwent a

diskectomy. When she was permitted to return to work, her physician issued a permanent lifting restriction of no more than 40 pounds. The defendant hospital had a 75-pound lifting requirement for staff nurses. *Id.* In concluding that the defendant hospital did not regard the plaintiff as disabled under the ADA, the court of appeals noted that: "Mercy did not perceive Brunko's lifting restriction as substantially limiting the major life activity of working as Mercy encouraged Brunko to apply for and accept other positions in the hospital." *Id.* at 942. Here, the fact that GKN removed Nock from his position in the repair booth and transferred him to the Ag Rim line does not generate a genuine issue of material fact that GKN regarded Nock as unable to perform a class of jobs or a broad range of jobs. Thus, the court concludes that Nock has not met the first element of a prima facie case of a disability claim under the ADA and the ICRA. Therefore, defendant GKN's Motion For Partial Summary Judgment is granted.

### III.  CONCLUSION

Initially, because the court concludes that Nock has not generated genuine issues of material fact as to whether he suffers from a qualifying disability within the meaning of the ADA and the ICRA, the court grants GKN's Motion For Partial Summary Judgment on Nock's claim that he was discriminated against because of an actual disability. The court further concludes as a matter of law that Nock does not have a record of a qualifying disability and grants GKN's Motion For Partial Summary Judgment on Nock's claim that he was discriminated against based upon a record of having a disability. Finally, the court concludes that Nock has not generated a genuine issue of material fact that GKN regarded Nock as unable to perform a class of jobs or a broad range of jobs. Therefore, defendant GKN's Motion For Partial Summary Judgment is granted as to Nock's perceived disability discrimination claim.

**IT IS SO ORDERED.**

**DATED** this 9th day of September, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA